

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 06-80879-CIV-MIDDLEBROOKS/JOHNSON

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CITY OF BOCA RATON,

    Defendant.

_____/

**CLOSED CIVIL CASE**

## ORDER

THIS CAUSE comes before the Court upon Plaintiff United States' Motion for Partial Summary Judgment as to Liability (DE 69), and the City of Boca Raton's Motion for Summary Judgment (DE 64). Additionally, oral argument on these summary judgment motions was held on February 27, 2008, and at the oral argument, this Court instructed the parties to file additional memoranda about damages and about whether there were any factual disputes that would require a trial. The parties subsequently filed these memoranda and responses (DE 109, 110, 112, 113). I have reviewed the Motions, the memoranda, and the file in this matter.

**I. Background**

    This case involves Plaintiff's ("the DOJ") claim that Ordinance 4649 ("the Ordinance"), as amended by Ordinance 4701, passed by Defendant ("the City") discriminates against persons with

disabilities in violation of the Fair Housing Act ("FHA"), specifically 42 U.S.C. §3604(f)(1) & (2). The DOJ alleges that the Ordinance is discriminatory in that it singles out for regulation housing options for individuals recovering from drug and/or alcohol addiction ("recovering addicts"). The DOJ is challenging the same Ordinance that was the subject of dispute in a case recently decided by this Court, *Jeffrey O. et al. v. City of Boca Raton*, 511 F. Supp. 2d 1339 (S.D.Fla. 2007)("*Jeffrey O.*"). In *Jeffrey O.*, the defendant was the same, but the plaintiffs were different. The plaintiffs were two unlicensed providers of Substance Abuse Treatment Facilities ("SATFs") - Regency Properties of Boca Raton, Inc. ("Boca House") and Awakenings of Florida, Inc. ("Awakenings") - and seven tenants of these unlicensed SATFs. In this case, the plaintiff is the government.

The Ordinance at issue in both *Jeffrey O.* and the case at hand excludes SATFs from the City's residential districts, while allowing them to be located in the City's Medical Center district, or with approval, in the Motel-Business district. Specifically, the Ordinance amended the City's zoning regulations to exclude SATFs: 1) in all residential zones; 2) in all commercial zones except the Motel-Business district; and 3) in the Motel-Business district unless they are: a) not within a 1,000 foot radius of another existing SATF; and b) are issued conditional use permits by the City. City of Boca Raton Code or Ordinances ("Code"), Secs. 28-197; 28-331-677; and 28-743(e) (2006). The only district in which SATFs are allowed as a matter of right is the Medical Center district.

The Ordinance defined SATFs in two separate ways:

Substance Abuse Treatment Facility shall mean a service provider or facility that is:

(1) licensed or required to be licensed pursuant to Section 397.311(18). Fla. Stat.

2

or

> (2) used for room and board only and in which treatment and rehabilitation activities are provided at locations other than the primary residential facility, whether or not the facilities used for room and board and for treatment and rehabilitation are operated under the auspices of the same provider.
>
> For the purposes of this subparagraph (2), service providers or facilities which require tenants or occupants to participate in treatment or rehabilitation activities, or perform testing to determine whether tenants or occupants are drug and/or alcohol free, as a term or condition of, or essential component of, the tenancy or occupancy shall be deemed to satisfy the "treatment and rehabilitation activities" component of the definition contained in this section.

*Id.* at Sec. 28-2. In *Jeffrey O.*, this Court only found the second definition of a SATF–the definition that covered unlicensed SATFs–to be in violation of the FHA and struck it down.[1] The Court upheld the first definition of a SATF–the definition that covered licensed SATFs.

Despite my previous decision in *Jeffrey O.*, in its motion for partial summary judgment, the DOJ moves for an order (1) declaring that the first definition of a SATF in the Ordinance is a facially discriminatory violation of the FHA and (2) enjoining the City from enforcing it. The City, in its motion for summary judgment, argues that summary judgment should be granted in its favor for the following two reasons: (1) the DOJ should be precluded from relitigating this issue based on the doctrine of *res judicata*, and (2) the DOJ cannot establish that the licensed SATF definition constitutes a facially discriminatory violation of the FHA. In their subsequent memoranda, both parties agree that the issue of liability is properly decided on summary judgment and that there are no material factual disputes.

---

[1] The Court also found that Section 28-2 of the City Code, which capped the number of unrelated individuals who could live together in residential zones at three, to be in violation of the FHA because it did not establish a reasonable accommodation procedure.

## II. Facts[2]

In *Jeffrey O.*, the plaintiffs moved to consolidate their case with the DOJ's case, but the Court denied the Motion. *Jeffrey O.*, 03-80178, DE 183 (finding that because the cases were at "dramatically" different stages in the litigation process, it did not make sense to consolidate). While the cases were not consolidated, the DOJ did participate in *Jeffrey O.* by appearing to discuss remedies. At the remedy stage, the DOJ advocated that the entire Ordinance should be declared facially discriminatory, and noted that both *Jeffrey O.* and its case were about the same issue: whether the Ordinance singled out for regulation housing for recovering addicts, thus facially discriminating against persons with disabilities in violation of the FHA. *See Jeffrey O.*, DE 219, p.2. In its Final Order following the bench trial, as stated above, the Court did not find the entire Ordinance facially discriminatory. While it found the Ordinance invalid as to the unlicensed SATF definition, it did not find the Ordinance invalid as to the licensed SATF definition. It reasoned that "[n]othing in the statute indicates that by not allowing a licensed service provider to be located in a residential area, the City is precluding recovering individuals from living in residential areas where recovering individuals can reasonably live in residential areas of the City without needing two or more of the licensable service components listed in Section 397.311(18)." *Jeffrey O.*, 511 F. Supp. 2d at 1359. In a Motion for New Trial or to Alter or Amend Judgment, the plaintiffs asked the Court to reconsider its position on the licensed SATF definition and raised many of the same arguments raised by the DOJ in this case. *Jeffrey O.*, 03-

---

[2]The DOJ filed a separate statement of undisputed material facts in support its motion for partial summary judgment (DE 75). The City did not file a response to this. The City filed a statement of undisputed facts in support of its motion for summary judgment (DE 66) to which the DOJ responded, taking issue with many of the City's facts. The following are the undisputed facts in the case, as found by the Court from an independent investigation of the record, and only those undisputed facts which are material to this Order.

80178, DE 222. This Court, once again, upheld the licensed SATF definition and found plaintiffs' Motion to be "merely an attempt to relitigate the issue." *Jeffrey O.*, 03-80178, DE 259. The Plaintiffs appealed the Court's Final Order, but that appeal has subsequently been dismissed for failure to prosecute, and is now final.

As the Ordinance now stands, a SATF is defined solely as "a service provider" or "facility" that is "licensed or required to be licensed pursuant to Section 397.11(18)" of the Florida Statutes. Section 397.311(18) contains the definition for "licensed service providers" in Florida's chapter on Substance Abuse Services within its Public Health Code. A "licensed service provider" is defined as "a public agency under this chapter, a private for-profit or not-for-profit agency under this chapter, a physician or any other private practitioner licensed under this chapter, or a hospital that offers substance abuse impairment services through one or more of the following licensable service components" and then goes on to list the licensable service components. There are nine licensable service components, including: (a) addictions receiving facilities; (b) detoxification; (c) intensive inpatient treatment; (d) residential treatment; (e) day and night treatment; (f) outpatient treatment; (g) medication and methadone maintenance treatment; (h) prevention; and (i) intervention. Subsections (d) and (e) are the focus of the dispute in this case.

Subsection (d) of Section 397.311(18), the "residential treatment" component, is further subdivided into two different kinds of Residential Treatment Facilities. Specifically, Subsection (d) states:

> Residential treatment, which provides a structured, live-in environment within a nonhospital setting on a 24-hours-a-day, 7-days-a-week basis, and which includes:

> (1) Facilities that provide room and board and treatment and rehabilitation within the primary residential facility; and
>
> (2) Facilities that are used for room and board only and in which treatment and rehabilitation activities are provided on a mandatory basis at locations other than the primary residential facility. In this case, facilities used for room and board and for treatment and rehabilitation are operated under the auspices of the same provider, and licensing and regulatory requirements would apply to both the residential facility and all other facilities in which treatment and rehabilitation activities occur.

Section 397.311(18)(d)(1) and (2). The first kind of Residential Treatment Facility provides housing and treatment within the same primary residential facility. Section 397.311(18)(d)(1). The second kind of Residential Treatment Facility provides housing and treatment in physically separate locations, but is operated by the same provider. Section 397.311(18)(d)(2).

Alternatives in Treatment, Inc. ("Alternatives") is an example of this second kind of Residential Treatment Facility where the housing and treatment are separate, but operated by the same provider. The housing part of Alternatives is located in an apartment building in a multifamily residential district in the City of Boca Raton. Alternatives possesses a Level 1 license from Florida's Department of Children and Families ("DCF") for both its housing and treatment facilities pursuant to Section 397.311(18).[3] Alternatives residents receive intensive outpatient treatment, including counseling sessions with licensed professionals, at the treatment facility. Psychologists and other health professionals who work at the treatment facility visit clients at their

---

[3] In addition to the two different kinds of Residential Treatment Facilities, state regulations further subdivide ResidentialTreatment Facilities into five different categories or "levels" that differ from each other based on type of treatment needed and provided, including duration of services provided. *See* Rule 65D-30.007, Fla. Admin. Code. While it is unclear exactly how each of these levels differ from each other, it is clear to the Court that Level 5 is merely the housing portion for a provider that requires its patients to receive clinical services from it at another location. *Id.* at (2)(e). Levels 1-4 allow the housing and treatment to be at the same location.

residents on an as-needed basis. House managers are present at the residence 24-hours a day, but do not themselves reside there. These house managers enforce curfews, secure medication, and provide transportation. Drug and/or alcohol testing is performed at either site on both a random and scheduled basis.

On September 23, 2004, the Planning and Zoning Director, Carmen Annunziato, sent the CEO of Alternatives, Mr. Frydman, a letter stating that Alternatives "will be required to cease unpermitted uses/operations as provided in the Code" when the Ordinance goes into effect. The letter also indicated that the Ordinance would not go into effect until sixty days after the *Jeffrey O.* lawsuit became final. The City, despite the language in the Ordinance, states repeatedly in its motion for summary judgment and in its response to the DOJ's motion for partial summary judgment that it is not interpreting the Ordinance as applying to Alternatives, and is thus allowing Alternatives to continue its residential operation in a residential district, and does not appear to have taken any action to close Alternatives' residential operation.

Subsection (e) of Section 397.311(18), the "day and night treatment" component, "provides a nonresidential environment with a structured schedule of treatment and rehabilitation services." Although the statute states that these Day and Night Treatment Facilities are "nonresidential," the implementing regulations suggest that Day and Night Treatment Facilities do in fact have separate housing and treatment. Specifically, the implementing regulations state that "no treatment takes place in the housing where the clients live and that the housing is utilized solely for the purpose of assisting clients in making a transition to independent living." *See* Rule 65D-30.0081(1), Fla. Admin. Code.

Wellness Resource Center, Inc. ("Wellness") and Renaissance Institute ("Renaissance"),

are examples of Day and Night Treatment Facilities. Both have licenses for "Day/Night Community Housing Services." The treatment parts of the two facilities are in the Motel-Business district of the City of Boca Raton and the housing parts are in Delray Beach. The Ordinance was never enforced against either one of these SATFs.

### III. Legal Standard

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P . 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-moving party. *See Arrington v. Cobb County*, 139 F.3d 865, 871 (11th Cir. 1998); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Further, conclusory, uncorroborated allegations by a party in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment. *See Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

## IV. Analysis

The Court notes at the outset of its analysis that both parties presented numerous legal arguments seeking summary judgment. While the Court finds summary judgment to be an appropriate resolution of this matter, it does not necessarily find it appropriate for the reasons presented by the parties. First, the Court will address the City's argument that the DOJ is precluded from bringing this case based on the doctrine of *res judicata*. Then the Court will address whether the licensed SATF definition violates the FHA.

### A. Res Judicata

The City's first argument is that the DOJ is precluded from bringing this case based on the doctrine of *res judicata*. A party seeking to invoke the doctrine of *res judicata* must establish its propriety by satisfying four initial elements: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *In re Omine*, 485 F.3d 1305, 1312-13 (11th Cir. 2007)(*quoting In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001)).

The City appears to be arguing that the DOJ was in privity with the plaintiffs in *Jeffrey O*. Privity here is best established under one of two different theories: (1) virtual representation or (2) control. *E.E.O.C. v. Pemco Aeroplex*, 383 F.3d 1280 (11th Cir. 2004)(finding that privity was not established under either theory where EEOC brought Title VII enforcement action charging employer with companywide racial harassment after it had participated in individual plaintiffs' cases against the same defendant). As the Court finds that the City has failed to establish privity

under either of these theories, it will not grant summary judgment in the City's favor on this ground. *Id.* at 1285 (If "privity of parties cannot be established, then there is no need to examine the other factors in determining whether res judicata ...applies." ).

Moreover, it is considered a rarity for there to be privity between a private party in one action and a governmental agency in a later action. *Id.*, 383 F.3d at 1290-91. Generally, governmental agencies are not bound by private litigation when the agency's action seeks to enforce a federal statute that implicates both public and private interests. *Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413, 1425 (11th Cir. 1998).[4]

**B. FHA violation**

The FHA prohibits a public entity from discriminating against disabled persons by denying such persons the ability to live in a dwelling. 42 U.S.C. §3604(f). The purpose of the FHA is to "prohibit local governments from applying land use restrictions in a manner that will...give disabled people less opportunity to live in certain neighborhoods than people without disabilities." *Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 562 (7th Cir. 2003)(citations omitted).

Whether an ordinance violates the FHA requires a two-step inquiry. At the first step, the Court must determine whether the plaintiff has made out a prima facie case of discrimination. *See Jeffrey O. v. The City of Boca Raton*, 511 F. Supp. 2d 1339, 1349-50 (S.D.Fla. 2007). A prima

---

[4]To the extent the City is also making the argument that independent of the doctrine of *res judicata* the Court is somehow obligated to follow its previous decision, the Court would like to point out that while the Court will give "great weight" to its opinion in *Jeffrey O.*, the Court is not obligated to follow that opinion. *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004)(stating that a district court judge, while not bound by a prior decision, "ought to give great weight to his own prior decisions.").

facie case of discrimination is made by showing that an ordinance singles out disabled individuals with regard to housing and applies different rules to them. *Community House, Inc. v. City of Boise*, 490 F.3d 1041, 1050 (9th Cir. 2007)("*[w]ith regard to facially discriminatory housing policies...* 'a plaintiff makes out a prima facie case of intentional discrimination under the [FHA] merely by showing that a protected group has been subjected to explicitly differential... treatment'")(*quoting Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1500 (10th Cir. 1995))(emphasis added). The question is not whether a city was specifically intending to discriminate against recovering addicts, but rather whether the ordinance on its face treats recovering addicts differently from non-disabled individuals. *See Larkin v. State of Mich. Dep't of Soc. Servs.*, 89 F.3d 285, 290 (6th Cir. 1996)(discussing how a defendant's benign motive does not prevent a statute from being discriminatory on its face).

At the second step, the Court must determine whether the differential treatment is justified such that is not a violation of the FHA. While the Eleventh Circuit has not addressed what constitutes a valid justification, I previously held that the following three justifications, among others, are valid: (1) legitimate public safety concerns; (2) that the restrictive ordinance benefits the protected class; and (3) a municipality's interest in protecting the residential character of a neighborhood. *Jeffrey O.*, 511 F. Supp. 2d at 1351 (acknowledging that all three of these justifications are valid and that this is not a closed list); *Community House, Inc. v. City of Boise, Idaho*, 468 F.3d 1118, 1125 (9th Cir. 2006)(acknowledging that the first two justifications are valid); *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1503-04 (10th Cir. 1995) (acknowledging that the first two justifications are valid). *But see Familystyle v. City of St. Paul*, 923 F.2d 91, 94 (8th Cir. 1991) (requiring governmental defendant to show that discriminatory ordinance is

"rationally related to a legitimate governmental purpose.").

As an initial matter, it appears that most of the licensed service providers covered by the licensed SATF definition in the Ordinance do not implicate the FHA, and therefore the area of dispute between the parties is quite narrow. The Ordinance certainly restricts where licensed service providers can be located in the City of Boca Raton, but that is a separate question from whether the Ordinance discriminates against recovering addicts with regard to housing. Out of the nine licensed service provider components, only three of them – the intensive inpatient treatment facilities, the Residential Treatment Facility, and the Day and Night Treatment Facilities – appear to implicate housing for recovering addicts. *See* Subsections (c)-(e), Section 397.311(18). The other six licensed service provider components do not explicitly have to do with housing and thus do not appear to implicate the FHA. With regard to intensive inpatient treatment facilities, the Court finds that these facilities, which combine treatment and housing in the same location, are less like dwellings and more akin to hospitals legitimately prohibited from residential districts by the zoning ordinance.[5] This leaves only two kinds of licensed service provider components – the Residential Treatment Facilities and the Day and Night Treatment Facilities – both of which cover facilities that may have separate housing and treatment. *See* Section 397.311(18)(d)(2); Rule 65D-30.0081(1), Fla. Admin. Code.

The DOJ argues, and I agree, that these facilities with separate housing and treatment are nearly identical to the unlicensed SATFs that this Court addressed in *Jeffrey O.* and which resulted in this Court's finding that the second definition of the Ordinance violated the FHA. *Cf.*

---

[5] Section 397.311(18)(c) describes "intensive inpatient treatment" facilities as those that "include[] a planned regimen of professionally directed evaluation, observation, medical monitoring, and clinical protocols provided 24 hours per day, 7 days per week, in a highly structured, live-in environment."

Section 397.311(18)(d)(2) and Code, Sec. 28-2(2). The only significant difference is that the housing and treatment are facilitated by the same provider.

The City appears to concede that applying the Ordinance to these two kinds of facilities with separate housing and treatment is problematic, as it has repeatedly stated that it will not read the Ordinance to cover the housing portion of these facilities. The City argues that it will not regulate the housing portion of Residential Treatment Facilities with separate housing and treatment, such as Alternatives, because it is not covered by the Ordinance. It also argues that the housing portion of Day and Night Treatment Facilities is not licensable and therefore unaffected by the Ordinance. More specifically, the City claims that it has "always maintained that a residence that provides no medical and commercial services on-site even if it is licensed...is not a 'service provider or facility' under the Ordinance." *See* City's Opposition Memorandum (DE 85), p.10.

Thus, having had further opportunity to consider the matter and without repeating the analysis contained in *Jeffrey O.*, I now find that the Ordinance violates the FHA with respect to Subsections (d) and (e) of Section 397.311(18). The separate housing portions of these facilities should be treated the same way as the Court treated the unlicensed SATFs in *Jeffrey O.* As a remedy, the Court enjoins the City from applying the Ordinance with respect to the separate housing portion of any Residential Treatment Facility or Day and Night Treatment Facility licensed or required to be licensed under Subsections (d) and (e) of Section 397.311(18). *See Ayotte v. Planned Parenthood of N. New England, et al.*, 546 U.S. (2006)(supporting the notion that courts should narrowly tailor relief where possible). With regard to the other licensed service provider components, the Court does not find that the Ordinance violates the FHA, as it has not

13

been established that the FHA is even implicated by most of them.

## V. Damages

The DOJ seeks compensatory damages on behalf of the owners and operators of Alternatives, Wellness, Renaissance, and Incentives. The first three – Alternatives, Wellness, and Renaissance – are licensed SATFs and the last one, Incentives, is an unlicensed SATF. More specifically, the DOJ appears to be arguing that the licensed SATFs are entitled to economic damages suffered when they had to obtain conditional use permits ("CUPs") in order to continue operating their treatment facilities in the Motel-Business districts, as required by the Ordinance. The DOJ is also attempting to get non-economic damages for Alternatives, Wellness, and Incentives, based on the stress that the Ordinance caused them. The DOJ also argues that the Court should hold a trial to give the DOJ the opportunity to present evidence and testimony in support of its claims for economic and non-economic damages.

The City, on the other hand, argues that no trial is necessary as there are no damages in this case. With regard to the economic damages, the City argues that the costs that Alternatives, Wellness, and Renaissance incurred in obtaining CUPs for their treatment facilities do not implicate the FHA, as the treatment facilities have no beds. With regard to the non-economic damages, the City argues that corporations are not entitled to such damages. Lastly, the City argues that it would be inappropriate to award Incentives damages here because unlicensed SATFs are outside the scope of this litigation.

The FHA authorizes the Attorney General to seek such "relief as the court deems appropriate, including monetary damages to persons aggrieved." 42 U.S.C. §3614(d)(1)(B). The

14

FHA's definition of "aggrieved person" is extremely broad, and includes corporations. *See* 42 U.S.C. §3602(d) (defining "person"); Housing Discrimination Law and Litigation §12A:1 "Standing to sue under the Fair Housing Act; definition of 'aggrieved person.'" "[A]ggrieved persons" includes any person who: "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. §3602(i). Additionally, "[a]nger, embarrassment, and emotional distress are clearly compensable injuries" under the FHA. *Banai v. Secretary, U.S. Dep't of Housing and Urban Development*, 102 F.3d 1203, 1207 (11th Cir. 1997)(citation omitted); *Secretary, U.S. Dep't of Housing and Urban Development v. Blackwell*, 908 F.2d 864 (11th Cir. 1990)(enforcing decision made under HUD that vendor's refusal to sell house to black purchasers violated FHA and awarding non-economic damages to both black purchasers and white tenants who subsequently leased the home from the vendor).

While I acknowledge the DOJ's right to seek both economic and non-economic damages on behalf of these housing providers, I conclude, as a matter of law, that damages should not be awarded. The Court makes this determination taking all of the facts that the DOJ asserts in its findings of fact and conclusions of law as true (DE 102). The Ordinance was only found violative of the FHA on its face to the extent that it regulates the separate housing portion of Residential Treatment Facilities and Day and Night Treatment Facilities. The rest of the Ordinance still stands. The economic damages that the DOJ seeks are all for the labor that went into obtaining CUPs that these licensed SATFs would have had to obtain anyway. Additionally, it appears to be well-established in FHA cases that courts only award compensatory economic damages for losses that flow from the violation of the FHA. *See, e.g., Silver Sage Partners, Ltd. v. Desert Hot*

*Springs*, 251 F.3d 814 (9th Cir. 2001)(upholding and reinstating jury award in excess of $3 million to developer for lost profits and other financial damages incurred as a result of city's refusal to approve low-income housing project in violation of the FHA); *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227 (D.C. Cir. 1997) (finding nonprofit corporation entitled to damages for delayed capital contributions caused by city's efforts to prevent corporation from providing rental housing to recovering addicts in violation of the FHA). Accordingly, this Court will not award damages associated with the costs of obtaining CUPs since these expenditures do not flow from the FHA violation and the CUPs needed to be obtained anyway.

As for the non-economic damages that the DOJ seeks on behalf of Alternatives, Wellness, and Incentives, the Court is similarly unmoved. With regard to Incentives, I agree with the City that Incentives' claim for non-economic damages is not appropriately sought in this case, as this case only addresses the licensed SATF portion of the Ordinance and Incentives is an unlicensed SATF. Wellness's housing facility is not even located in the City of Boca Raton, so it would also not be appropriate for its operators to collect non-economic damages, as their non-economic damages all flow from the stress they experienced trying to keep their treatment facility open, and, for the same reasons discussed above, this is emotional distress which they would have experienced anyway and is not compensable. This leaves Alternatives.

The Court is convinced that no matter how grave the emotional distress of Mr. Frydman (Alternatives' CEO and Executive Director) was following the passage of the Ordinance, it still would not grant any non-economic damages. In 2004, Mr. Frydman received a letter from the City informing him that he may have to close his housing facility which was in a residential district, but the letter also stated that the Ordinance would not go into effect until after *Jeffrey O.*

had been decided. Although the City never enforced the Ordinance against Alternatives' housing facility and subsequently informed Mr. Frydman that it would not enforce the Ordinance, Mr. Frydman claims to have experienced emotional distress because he was afraid that the Ordinance might someday be enforced. I find the claims to be too speculative and attenuated to warrant damages. Most importantly, the Ordinance was never enforced. Moreover, it would be impossible to isolate the source of Mr. Frydman's claimed emotional distress, i.e. whether he was distressed about the Ordinance's passage generally and all the work that went into maintaining his licenses or whether he was distressed about the possibility that he might have to close Alternatives' separate housing facility. *See U.S. v. Lepore*, 816 F.Supp. 1011, 1023-24 (M.D.Pa. 1991)(holding that tenant was not entitled to recover emotional distress damages because he had not been humiliated by actions of mobile home park operators but was instead angry at having to go through process of prosecuting case); *U.S. v. Balistrieri*, 981 F.2d 916, 931 (7th Cir. 1992) (plaintiff seeking to recover emotional distress damages must actually prove that he suffered emotional distress caused by the FHA discrimination)(citations omitted). Thus, a trial on damages would be futile as the Court does not find that any damages are warranted by the situation.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff United States' Motion for Partial Summary Judgment as to Liability (DE 69) is GRANTED in PART and DENIED in PART. It is further

ORDERED AND ADJUDGED that the City of Boca Raton's Motion for Summary Judgment (DE 64) is GRANTED in PART and DENIED in PART. It is futher

ORDERED AND ADJUDGED that the City is ENJOINED from applying the Ordinance with respect to the separate housing portion of any Residential Treatment Facility or Day and

Night Treatment Facility, defined at Subsections (d) and (e) of Section 397.311(18).[6] It is further

ORDERED AND ADJUDGED that no damages are awarded in this case. It is further

ORDERED AND ADJUDGED that the Clerk of Court shall CLOSE this case and all pending motions shall be DENIED as MOOT.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 12 day of March, 2008.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to Counsel of Record

---

[6]This means that, regardless of whether the Residential Treatment Facility has a Level 1 license or a Level 5 license and regardless of whether or not the Day and Night Treatment Facility's separate housing portion is required to be licensed, if there is a separate housing portion, the Ordinance cannot be enforced against it.

18